**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | | |
|---|---|---|
| ROLANDO MARTINEZ, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL INDICTMENT NO. |
| | : | 3:09-CR-0005-TCB-JFK |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | CIVIL FILE NO. |
| | : | 3:13-CV-0184-TCB-JFK |

**UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**

Movant, Rolando Martinez, challenges via 28 U.S.C. § 2255 the

constitutionality of his conviction and sentence entered in this court under the above

criminal docket number.  The matter is before the court on the § 2255 motion, (Doc.

160), the government's response, (Doc. 163), and Movant's reply, (Doc. 165).

**I.    Discussion**

    **A.    Background**

Movant – who has twenty-five years of experience in trucking and states that a

trucker should not be convicted because he is non-observant, hapless, and clueless –

picked up peppers and mangos in McAllen, Texas, for a trip to North Carolina.  (Doc.

160, Mem. at 18; Doc. 165 at 9); United States v. Martinez, 509 F. App'x 889, 891

(11th Cir. 2013).  After loading the fruit, Movant immediately detoured more than fifty

miles (one-way) for a clutch repair in Brownsville, Texas. <u>Martinez</u>, 509 F. App'x at 891-92. Movant's truck had no proper door security seals, and Movant had no contact information on the bill of lading regarding the place of delivery and expected to receive a phone call regarding delivery details later in his trip from a man named Ortega. <u>Id.</u> After a traffic stop in Georgia, a consent-search of Movant's truck revealed that it contained over a ton of marijuana. <u>Id.</u> at 892.

The grand jury for the Northern District of Georgia indicted Movant on one count of possessing with intent to distribute at least 1,000 kilograms of marijuana. (Doc. 10). Movant pleaded not guilty and proceeded to trial represented by Alexander Repasky before former Judge Jack T. Camp. (Docs. 17, 68). After the jury informed the court that it was unable to reach a decision, the court declared a mistrial. (Doc. 76). Thereafter, the action was reassigned to the Honorable Hugh Lawson, and Movant's second trial began in December 2010. (Docs. 78, 80, 110). The jury found Movant guilty as charged. (Doc. 115). On May 4, 2011, the court sentenced Movant to a 210-month term of imprisonment. (Docs. 127, 128).

Movant appealed and argued that "(1) Judge Camp should have granted a motion for judgment of acquittal he made after the close of all of the evidence in the first trial, (2) the Government engaged in misconduct by permitting the first trial

against him to proceed and then subjecting him to a retrial, and (3) Judge Lawson erred in imposing a 'special skill' enhancement upon him under the Sentencing Guidelines." Martinez, 509 F. App'x at 891.  On February 15, 2013, the Eleventh Circuit Court of Appeals rejected the above grounds and affirmed Movant's conviction and sentence. Id. at 894.

Movant now challenges his conviction via § 2255 on the following grounds:  (1) the court unconstitutionally enhanced his sentence with unindicted actions and elements found by the court by a preponderance of the evidence, (2) the prosecution committed misconduct in failing to suspend the first trial when it possessed knowledge of judicial malfeasance, (3) his conviction was obtained through the perjured testimony of a jailhouse informant and counsel provided ineffective assistance by failing to impeach his testimony properly, and (4) counsel provided ineffective assistance by failing to subject the government's case to a meaningful adversarial testing, conduct a sufficient pre-trial investigation, and call defense witnesses, which cumulatively undermined the fairness of Movant's trial.  (Doc. 160, Mem. at 1).

AO 72A
(Rev.8/8
2)

## II.   28 U.S.C. § 2255 Standard

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or otherwise is subject to collateral attack.  28 U.S.C. § 2255. Collateral relief, however, is limited, and "[o]nce [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted[.]"  United States v. Frady, 456 U.S. 152, 164-65 (1982).  Thus, "[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012) (quoting United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000)), cert. denied, _ U.S. _, 133 S. Ct. 1740 (2013).  Further, a defendant "must assert all available claims on direct appeal," Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004), and claims that a § 2255 movant could have asserted on direct appeal, but did not, generally are procedurally barred absent (1) a showing of cause for the default and actual prejudice or (2) a showing of a fundamental

4

miscarriage of justice or actual innocence, <u>McKay v. United States</u>, 657 F.3d 1190, 1196 (11th Cir. 2011), <u>cert. denied</u>, _ U.S. _, 133 S. Ct. 112 (2012).[1]

Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." <u>Lynn</u>, 365 F.3d at 1232 (quoting <u>Richards v. United States</u>, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); <u>see also</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate

---

[1]"[T]o show cause for procedural default, [a movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal . . . " or that the matter was not raised because of ineffective assistance of counsel. <u>Lynn</u>, 365 F.3d at 1235; <u>see also</u> <u>Reece v. United States</u>, 119 F.3d 1462, 1468 (11th Cir. 1997) (holding that, absent an "objective factor external to the defense" as cause, the movant must show that the default was caused by ineffective assistance of counsel (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)) (internal quotation marks omitted)).  If a petitioner shows cause, he also must show prejudice – that the error complained of "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Reece</u>, 119 F.3d at 1467 (emphasis in original) (quoting <u>Frady</u>, 456 U.S. at 170) (internal quotation marks omitted).  To make a credible showing of actual innocence, "a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of . . . new evidence of innocence." <u>McKay</u>, 657 F.3d at 1196 (alteration in original) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)).

5

AO 72A
(Rev.8/8
2)

development and presentation of relevant facts). On collateral review, it is the movant's burden to establish his right to relief. <u>Mackey v. United States,</u> 221 F. App'x 907, 910 (11th Cir. 2007).

"An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" <u>Gordon v. United States,</u> 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255). That is the case here, as shown in the discussion below.

## III.   <u>Discussion</u>

### A.   <u>Movant's Sentence</u>

Movant was convicted on one count of possessing at least 1,000 kilograms of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vii). (Doc. 128). Movant's Pre-Sentence Investigation Report recommended that he receive enhancements based on his use of a commercial driver's license to facilitate his crime and based on obstruction of justice. (<u>See</u> Doc. 138 at 2). The court overruled Movant objections to those enhancements and found that his guidelines range was 210 to 262 months. (<u>Id.</u> at 3, 6, 10-12, 16-17).[2] The court sentenced

_____

[2]The court implicitly, without specific discussion, overruled the objection based on using a commercial driver's license.

6

Movant to a 210-month term of imprisonment. (Id. at 17). On direct appeal, Movant argued that the court erred in imposing an enhancement based on his use of a commercial driver's license. Appellant's Opening Br. at 38, Martinez, 509 F. App'x 889 (No. 11-12131), 2011 WL 5124976. The Eleventh Circuit rejected the claim. Martinez, 509 F. App'x at 894.

Movant, relying on Alleyne v. United States, _ U.S. _, 133 S. Ct. 2151 (2013), now argues that both enhancements – which were not listed on the indictment or supported by jury fact finding – violated his Sixth Amendment right to a jury trial. (Doc. 160, Mem. at 7-9). The government argues that Movant's Sixth Amendment claim is procedurally defaulted and fails on its merits. (Doc. 163 at 19-26). Movant argues that his procedural default should be excused because Alleyne was not decided until after he was sentenced and because he is actually innocent. (Doc. 165 at 1-2).

The Supreme Court in Alleyne held that the Sixth Amendment requires a jury to find beyond a reasonable doubt facts that increase a defendant's range of penalties, i.e., facts that increase the statutory maximum or the statutory mandatory minimum to which he is subject. Id., _ U.S. at _, 133 S. Ct. at 2160. The Supreme Court also stated that it remained permissible for judges to consider various factors when imposing a sentence within the prescribed statutory range. Id., _ U.S. _, 133 S. Ct. at 2163.

7

Without addressing procedural default, this claim fails on its merits. Movant was subject to not less than ten years (120 months) and not more than life based on his possession of 1,000 kilograms of marijuana with the intent to distribute. See 21 U.S.C. § 841(b)(1)(A)(vii). The court imposed a sentence that was within the prescribed statutory range for Movant based on the facts – possession of 1,000 kilograms of marijuana with the intent to distribute – which were found by the jury beyond a reasonable doubt. (See Doc. 115). Movant's claim based on Alleyne is without merit. See United States v. Son, No. 13-10590, 2014 WL 351666, at *5 (11th Cir. Feb. 3, 2014) ("[A] district court may enhance a sentence based upon judicial fact-finding so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict.").

### B. Prosecutorial Misconduct for Failing to Suspend the First Trial when it Possessed Knowledge of Judicial Malfeasance

On direct appeal, Movant argued that the prosecution committed outrageous misconduct in allowing his first trial to proceed even though the government knew that Judge Camp was under investigation for federal felony drug offenses and would be arrested after trial. Appellant's Opening Br. at 29-33, Martinez, 509 F. App'x 889 (No. 11-12131), 2011 WL 5124976. The Eleventh Circuit Court of Appeals rejected

8

this claim, writing: "although it may be said that the Government was fortunate in that the first trial resulted in a mistrial, its good fortune in no way reflects improper behavior on its part." <u>Martinez</u>, 509 F. App'x at 893.

Movant again argues that the government committed misconduct in allowing his trial to proceed before Judge Camp.  (Doc. 160, Mem. at 9-14).  The government responds that the matter has been addressed by the Eleventh Circuit and is precluded from further review.  (Doc. 163 at 26-28).

As stated earlier, "[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." <u>Rozier</u>, 701 F.3d at 684 (quoting <u>Nyhuis</u>, 211 F.3d at 1343).  The court agrees with the government.  The Eleventh Circuit has rejected the claim that the government committed misconduct in allowing the first trial to proceed, and reconsideration by this court is not required.

**C.   <u>Ineffective Assistance of Counsel</u>**

Movant asserts that counsel provided ineffective assistance (1) by failing properly to impeach jailhouse informant Michael T. White's perjured testimony and (2) by failing to subject the government's case to a meaningful adversarial testing,

9

conduct a sufficient pre-trial investigation, and call defense witnesses, all of which cumulatively resulted in prejudice.  (Doc. 160, Mem. at 15-24).

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To show constitutionally ineffective assistance of counsel, a movant must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him.  Id. at 690-92.  The court may resolve an ineffective assistance claim based on either of the above prongs.  Bottoson v. Moore, 234 F.3d 526, 532 (11th Cir. 2000).  Under the first prong, a movant must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  Under the second prong, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

10

1.      **Perjured Testimony of Jailhouse Informant White and Counsel's Failure to Impeach White**

a.      **Background**

During Movant's first trial, the following witnesses testified:  J. Thompson, Georgia State Patrol Officer; Jason Allen, Henry County Police Sergeant; T. K. Gordon, Doraville Police Sergeant; and Movant.  (Doc. 89 at 33, 119, 140; Doc. 90 at 203).  Evidence from the first trial showed the following.

On April 26, 2009, an eighteen-wheel tractor-trailer being driven by [Movant] was stopped by an officer of the Georgia State Patrol who, as the tractor-trailer drove past him, heard a pounding noise indicating a bad tire.  The officer also observed the tractor-trailer swerve across the "fog line."  Initiating a routine traffic stop, the officer approached the rear of the tractor-trailer and noticed that the door handles were not fitted with a security seal as is common to assure that cargo is not tampered with during transit.

Upon request of the officer, [Movant] presented his Texas commercial driver's license.  He told the officer that he was hauling mangos and peppers from McAllen, Texas to Charlotte, North Carolina.  Again, upon request of the officer, [Movant] turned over his driver's log book and the bill of lading.  The officer noted several irregularities.  First, while the bill of lading showed the destination as "All Seasons Produce, Charlotte, North Carolina," there was no street address or physical delivery location, and no telephone number or other contact information was listed for either the owner or receiver.  While most bill of ladings are computer generated and typewritten, the bill of lading produced by [Movant] was written entirely by hand and was stamped "Paid." Moreover, the bill of lading did not identify the shipper, or the truck broker, or motor carrier.

11

The log book showed that after the cargo (which was perishable) had been loaded on April 23, 2009, [Movant] did not immediately head toward North Carolina but doubled back to Edinburg, Texas, and then back to his hometown, Brownsville, Texas. He remained in Brownsville until early on April 24, 2009, delaying his delivery of the goods.

Because his suspicions were aroused, the officer questioned [Movant] in more detail about the cargo. He specifically asked [Movant] if he was transporting methamphetamine, cocaine, marijuana, or any hazardous materials. The officer noted that when he mentioned "marijuana" [Movant] dropped his head toward the ground. He also locked his keys inside the cab of the tractor and otherwise appeared excessively nervous during the traffic stop even though the officer had told [Movant] he was only going to give him a warning for the traffic violation.

[Movant] gave oral and written consent to the search of the tractor-trailer. The officer discovered that the boxes of peppers were concealing other boxes that contained blocks covered by a foil-like wrapping material. These blocks were visible through the ventilation openings in their containers. The officer cut into one of the blocks and found that it was actually a bale of marijuana. The more he searched the cargo, the more bales of marijuana he found. Subsequently, the trailer was unloaded, and a total of 84 bales of marijuana weighing over one ton (approximately 1,204 kilograms) was found. The marijuana had an estimated wholesale value of between one and a half and two million dollars.

After being advised of his Miranda[3] rights, [Movant] stated that he was delivering his shipment to "Four Seasons Produce" in Charlotte, North Carolina. As noted above, the bill of lading reflected that the delivery was to be made to "All Seasons Produce." [Movant] also said he did not know the exact location in Charlotte where he was delivering

---

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

12

the produce.  Further, he asserted that he was only instructed to transport the cargo to Charlotte where he was to receive a phone call from the person who had hired him, whom he knew only by the name "Ortega," and that Ortega would send four box trucks to unload the cargo from the trailer.  He indicated that he did not have any contact information for Ortega but that Ortega knew how to reach him.[4]

Two cell phones were found inside the cabin of the tractor, one of which was a Boost prepaid cell phone.  The officer testified that he knew that Boost prepaid phones are often used in drug trafficking activity because they can be obtained without providing identification.  Drug traffickers often carry several cell phones, one as a personal phone and the others to facilitate the drug trafficking.

[Movant] indicated that he did not know how to use the Boost cell phone.  Documents were found that he had purchased prepaid cellular phone minutes, such as those used with a Boost prepaid phone, at a truck stop in Brownsville.  [Movant] also stated in response to questioning that he observed the cargo as it was being loaded into his trailer, that he counted the containers as they were being loaded, and that he instructed the workers how to arrange the pallets for proper weight distribution.

Martinez, 509 F. App'x at 891-92 (finding that the evidence at Movant's first trial was

sufficient to withstand Movant's motion for acquittal).  At the close of the evidence in

the first trial, the trial court denied Movant's motion for a judgment of acquittal, and,

---

[4]Movant testified at both trials that Ortega would call him on his cell phone and that he would record the number and testified in the first trial that he did not know if Ortega would answer if Movant called him back.  (Doc. 90 at 220, 250; Doc. 141 at 310).

AO 72A
(Rev.8/8
2)

subsequently, the jury was unable to reach verdict, and a mistrial was called.  (Docs. 70, 76).

During Movant's second trial, Thompson, Gordon, and Movant again testified. (Doc. 140 at 93, 147; Doc. 141 at 298).  Additionally, Michael T. White, a prisoner who met Movant during confinement, (Doc. 141 at 205); Raymond F. Flemming, an expert in the area of commercial trucking, (id. at 241, 246); Gregory Newell, Clayton County Investigator, (id. at 289); and Michael Dailey, Henry County Police Officer, (id. at 332),[5] testified for the government.

There appears to be no dispute that the evidence presented during the second trial included, for the most part, the evidence presented during the first trial.  (See Doc. 163 at 13).  The additional evidence at the second trial, which began in December 2010, consisted of White's testimony that Movant admitted to White that he knowingly transported marijuana and Flemming's expert testimony regarding trucking practices and the irregularity of the shipment at issue.  (Doc. 140); see Martinez, 509 F. App'x at 892 n.3.

White, who is serving federal sentences for crimes related to an auto theft ring, testified on December 14, 2010, that Movant had revealed during discussions while in

_____

[5]Henry County Sergeant Allen did not testify at the second trial.

AO 72A
(Rev.8/8
2)

confinement that he had known that he was hauling marijuana and that his wife had obtained for him a fake, undated clutch-repair receipt.[6] (Doc. 141 at 201, 207-12, 215, 220-21). White stated that, after he entered into his current guilty-plea agreement, he started thinking about avenues to help the government because it might benefit the government or himself. White stated that he thought he could help the government by telling them what Movant had told him concerning his guilt. (Id. at 228-29). White testified that he had a twenty-year-old son who had drug problems with marijuana, that he thought he might be able to help the government against someone who deals in drugs, that he had been promised nothing in return for his testimony, that he hoped his testimony would help him, and that if "it don't, it don't." (Id. at 217, 233).

---

[6]In United States v. White, No. 3:09-cr-0016-JOF (N.D. Ga. Jan. 5, 2011), White pleaded guilty in August 2010 to a possessing with intent to sell a vehicle with an altered vehicle identification number (VIN) and to committing the offense while on release. The government moved on December 21, 2010, for a sentence reduction for substantial assistance based on White providing (1) testimony in Movant's case, (2) information on a stolen vehicle, and (3) information on others involved in altering VINs on stolen vehicles. Mot., White, No. 3:09-cr-0016-JOF, ECF No. 41. The government recommended a downward departure that resulted in a thirty-seven to forty-six month sentencing range instead of a fifty-seven to seventy-one month range and that the court impose a thirty-seven month sentence, consecutively to the one he already was serving. Id. Tr., ECF No. 55. The court imposed a total forty-six month sentence, to run consecutively to White's prior sentence. J., White, No. 3:09-cr-0016-JOF.

AO 72A
(Rev.8/8
2)

Flemming, President and CEO of a cargo claims service – who started out as a truck driver in the 1980s, obtained risk and insurance training in the 1990s, and had notable experience in the trucking business – qualified as an expert on commercial trucking.  (Id. at 241-46).  After testifying extensively on trucking practices generally, (id. at 247-62), Flemming testified that Movant's truck load was improperly stacked with some "caving in[,]" that lids on boxes were opened,[7] and that a driver typically would refuse such a product or pallet or take an exception on the bill of lading, (id. at 263, 265-66).  Flemming also testified that a buyer would not accept a load of both peppers and mangos because peppers and mangos have different temperature requirements for shipping, the mangos would pick up the odor of peppers, and the refrigeration unit would function in a way that would damage the products based on their differing moisture content.  (Id. at 266-68).  On inspecting the bill of lading for Movant's shipment, Flemming testified that the lading would not allow proper tracking by the FDA in the event of a food-born illness; that it otherwise was incomplete; that the number of boxes listed on the lading would not have fit into Movant's trailer; and that if he were the receiver he would not "touch" the shipment or "bring one pallet of

_____

[7]Officer Thompson testified that when the trailer was initially opened, some of the pallets were leaning and some of the boxes of peppers had been opened.  (Doc. 140 at 104).

16

that product off."  (Id. at 269-73).  Flemming stated "if something like this comes in, number one, I would freeze it and get the FDA in . . . ."  (Id. at 275).  Flemming further testified that he had never heard of an eighteen-wheeler, fifty-three foot trailer, such as Movant's, being used to take produce to a farmer's market.[8]  (Id.).  Flemming testified that it was his conclusion that Movant's shipment was not a legitimate shipment of produce.  (Id. at 276).  On cross-examination, Flemming testified clearly and consistently.  (Id. at 276-84).  When asked whether there were some "mom and pops" who were unfamiliar with the trucking standards that he had discussed, Flemming responded "no" and explained that it was in their business interest to understand and follow the standards.  (Id. at 279-80).

The court instructed the jurors, among other things, to consider whether a witness had been convicted of a felony or had any reason for not telling the truth. (Doc. 141 at 364-65).   The court instructed the jurors as follows on deliberate ignorance:

> If a defendant's knowledge of a fact is an essential part of a crime, it is enough that the defendant was aware of a high probability that fact existed, unless the defendant actually believed the fact did not exist.  The deliberate avoidance of positive knowledge, which is the equivalent of

---

[8]Movant testified that he believed the shipment was for All Seasons Produce in North Carolina, a farmer's market.  (Doc. 141 at 302).

knowledge, occurs, for example, if the defendant possesses a package and believed that it contains a controlled substance, but deliberately avoids learning that it contains a controlled substance so that he or she can deny knowledge of the package's contents.  So, you may find the defendant knew about possession of a controlled substance if you determine beyond a reasonable doubt that the defendant actually knew about the controlled substance, or had every reason to know but deliberately closed his eyes.

But I must emphasize that negligence, carelessness, or foolishness is not enough to prove that the defendant knew about the possession of the controlled substance.

(Doc. 141 at 368).

### b.  <u>Parties' Arguments</u>

In his § 2255 motion, Movant contends that he has evidence, which counsel was ineffective for failing to obtain and/or present, that could have been used to impeach White.  (Doc. 160, Mem. at 16-18).  Movant argues that, in light of the jury's inability to come to a decision without White's testimony in the first trial, it is probable that the outcome would have been different had White properly been impeached.  (<u>Id.</u> at 18). In support, Movant presents the sworn declarations of prisoners Brian Tucker, Jimmy Richter, and Keith Wilson; a letter from prisoner Gary Fowler allegedly sent to counsel

at an unspecified time, apparently before trial; and a copy of a receipt for his clutch repairs.[9]  (Id., at 16-17 and Attachs.).

Tucker states (1) that he and White both worked in the same department for UNICOR and lived in the same unit; (2) that at some point before January 2010, White asked him about Rule 35[10] and prisoners who provided information to other prisoners to help them obtain early release; and (3) that approximately one year later White stated that things had gone well and that he had not received any additional time.[11] (Id., Sworn Declaration of Brian Tucker).  Richter states that when he was housed in the same cell with White, from May 15 through August 21, 2009, White asked him if he knew anything about Rule 35 motions and later told him that Tucker had provided him with helpful information that would help him with his case.   (Id., Sworn Declaration of Jimmy Richter).  Wilson states (1) that he and White worked together in UNICOR and had conversations and (2) that White told him, "I've just got done

---

[9]The copy of the truck repair receipt, provided by Movant, although dated, contains nothing to indicate when the date may have been placed on that receipt and neither affirms nor contradicts White's testimony on this matter.  (Doc. 160, Attach.).

[10]See Fed. R. Crim. P. 35(b).

[11]Tucker's assertion is incorrect, as shown by the sentence imposed in White's case, as noted earlier.

AO 72A
(Rev.8/8
2)

doing a 5k1.1 departure on a drug case with a Hispanic truck driver.  It wasn't easy to do.  I tried to pump him for information but he wouldn't say anything.  But, all I had to do was fill in some details and twist a few things and I got a bunch of time off." (Id., Sworn Declaration of Keith Wilson).  Fowler, in his letter, states (1) that he spoke with Movant about his case, sometimes when White was present, and that Movant never said anything to suggest that he was lying when he stated that he did not know what was loaded in his trailer and (2) that White, in other circumstances, had stated that he would do whatever it took to get out.  (Id., letter).

The government argues, among other things, that White was examined and cross-examined at trial on the benefits that he hoped to receive, that the jury was aware that they should consider White's testimony with caution, and that the new witnesses against White did not otherwise refute the overwhelming evidence of Movant's guilt. (Doc. 163 at 35-36).  The government also argues that Fowler's letter shows only what Movant stated when Fowler was present and that it does not refute testimony on what Movant stated in Fowler's absence.  (Id. at 34).

Movant replies that his first mistrial shows that without White's testimony the evidence against him was not overwhelming.  (Doc 165 at 5-8).  Movant argues that counsel was unreasonable in failing to interview Movant's and White's cell mates and

20

contends that the declarants would have been identifiable with a minimum of effort. (Id. at 4-5).

### c.   **Findings and Recommendation**

Movant fails to show prejudice based on counsel's failure to impeach White with testimony by Tucker, Richter (White's cell mate), Wilson, or Fowler.  Although Movant states that the declarants would have been identifiable with a minimum of effort, he does not indicate how counsel would have known to contact Tucker or Wilson (neither of whom states that he was a cell mate of either Movant or White) out of numerous other prisoners.  Further, a reasonable juror would not find an intent to fabricate testimony based on White's asking Richter and Tucker general questions about Rule 35 and providing assistance to the government, to the extent that White may have asked such questions.  Additionally, Wilson's testimony that White admitted to filling in details and twisting things would not have been available at the time of Movant's trial, and trial counsel was not ineffective for failing to discover it.  The undersigned also agrees with the government that counsel was not ineffective for failing to present testimony by Fowler, which would not have refuted White's testimony regarding Movant's statements to White in Fowler's absence.

The jury already was aware that White was motivated by the desire to help himself and had been cautioned regarding testimony from a person who had been convicted of a felony and who may have reason not to tell the truth. Based on (1) the evidence summarized from the first trial (which neither party has indicated to be significantly different in the second trial), (2) Flemming's expert assessment that the shipment was not legitimate in light of common trucking practices, and (3) the standard for knowledge/deliberate ignorance, there is no reasonable probability that the jury would have acquitted Movant if counsel had impeached White with the material in the declarations and the letter.[12]

### 2. Remaining Claims of Ineffective Assistance of Counsel

Movant also has argued that counsel provided ineffective assistance by failing to subject the government's case to a meaningful adversarial testing, conduct a sufficient pre-trial investigation, and call defense witnesses, all of which cumulatively

---

[12]To the extent raised, a claim that Movant's conviction was obtained based on White's allegedly perjured testimony fails because Movant did not raise the claim on direct appeal and because Movant has not overcome his procedural default by showing ineffective assistance of appellate counsel for failing to raise the issue or by showing actual innocence. The evidence summarized from the first trial, Flemming's testimony, and the standard for knowledge/deliberate ignorance also foreclose a finding of prejudice based on appellate counsel's assistance, and Movant's proffers do not meet the standard for showing actual innocence.

AO 72A
(Rev.8/8
2)

resulted in prejudice. (Doc. 160, Mem. at 19-24). Movant asserts that counsel was ineffective because the following matters were "left out":

- Any attempt to contact either origination or destination contacts for confirmation of the legitimacy of [Movant's] story.[]
- Attempts to contact the transmission shop to verify the story.[]
- Financial investigation to show whether defendant actually showed the money made from alleged trafficking.
- Contacting the weigh and inspection stations for records or video verification that defendant had gone through the station.
- Phone records verifying that RFC had contacted him.[]
- Defense expert witness to testify regarding normal practice for smaller truckers.
- Calling Judge Camp as a witness to establish impairment or bias.
- Investigation into Mike White's past and what cases he had researched on Pacer.
- Investigation of rebuttal witnesses to White's testimony[,] Gary Fowler[.]

(Doc. 160, Mem. at 21).

Movant has provided a copy of a paper – with a notation that "this is evidence . . . that Ortega exists" – that allegedly was found in Movant's truck and that exhibits Ortega's phone number. (Id., Attach.). Also, as indicated earlier, Movant has provided a copy of the receipt for his clutch repairs and the declarations/letter regarding White. (Id.). Movant argues (1) that the "RFC" dispatcher could have testified on the authenticity of the bill of lading, (2) that the truck loader could have testified that Movant did not unpack any of the pallets, (3) that the transmission

23

repairman could have testified regarding the transmission repair, (4) that Movant's wife could have testified why Movant was at home while his truck was being repaired, (5) jailhouse lawyer Robinson could have testified whether Movant ever confessed to a crime, and (6) Fowler could have testified on what White and Movant said.  (Doc. 160, Mem. at 23).

The government argues that counsel's decision on which witnesses to call is a matter of trial strategy, which is seldom second guessed; that allegations of what a witness would have said are largely speculative; and that Movant cannot show prejudice based on the overwhelming evidence of his guilt.  (Doc. 163 at 30-33, 36-37).  Movant replies that his first mistrial shows that the evidence against him was not overwhelming without White's testimony and asserts that it was counsel's duty to investigate and interview witnesses.  (Doc 165 at 5-8).

The Strickland standard, discussed earlier, applies.  In cases where "counsel is charged with multiple errors . . . prejudice may result from the cumulative impact of multiple deficiencies."  Cooper v. Fitzharris, 586 F.2d 1325, 1333 (9th Cir. 1978) (*en banc*).  To succeed on a claim of cumulative error by counsel, Movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional *errors*, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694 (emphasis added).  Thus, a movant must demonstrate that counsel's performance was professionally unreasonable on the individual claims and that, together, those errors prejudiced him.

Movant cannot show prejudice on his claims that counsel was ineffective on the matters that he "left out" when Movant himself has left out any proffer on those matters, i.e., testimony or evidence (1) from contacts at the shipment's origination or destination, (2) from a financial investigation, (3) from inspection station records, (4) of phone records, (5) from an expert on normal practice for smaller truckers, (6) from Judge Camp, (7) from a dispatcher stating the bill of lading's authenticity, (8) from the truck loader, (9) from the transmission repairman (other than the copy of the receipt discussed below), (10) from Movant's wife, or (11) from jailhouse lawyer Robinson.  See Hill v. Moore, 175 F.3d 915, 923 (11th Cir. 1999) (holding that absent proffer of evidence that supports claim, the petitioner could not show prejudice based on counsel's failure to introduce such evidence).

As discussed above, Movant fails to show prejudice based on counsel's failure to obtain and submit testimony based on the declarations and letter concerning White's possible bias.  As to the truck repair receipt, Movant testified regarding the repair, and even if Movant did indeed detour to have his clutch repaired, that does not bring into

25

question the remainder of the evidence against Movant.  Further, Movant testified at trial that he possessed Ortega's phone number or numbers on his cell phone.  The existence of a piece of paper allegedly found in Movant's truck and showing Ortega's phone number does not add significantly to that testimony.  A claim of cumulative error based on the above proffers fails because there is no reasonable probability that the result of the proceedings would have changed by the presentation at trial of the evidence represented by those proffers.

## IV.   Certificate of Appealability (COA)

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  To satisfy that standard, a movant must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed

further." Lott v. Attorney Gen., 594 F.3d 1296, 1301 (11th Cir. 2010) (quoting

Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted).

It is recommended that a COA be denied because it is not debatable that Movant

fails to demonstrate that he is entitled to relief.  If the court adopts this

recommendation and denies a COA, Movant is advised that he "may not appeal the

denial but may seek a certificate from the court of appeals under Federal Rule of

Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Proceedings for

the United States District Courts.

## V.   Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion, (Doc. 160), to vacate, set

aside, or correct his federal sentence be **DENIED**, and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255

motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED** this 9th day of June, 2014.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

27